# TERM LOAN LINE OF CREDIT AGREEMENT

**Commitment**: $200,000.00  **Date**: July __, 2014
**Expiration Date**: September 30, 2014

This TERM LOAN LINE OF CREDIT AGREEMENT (this "Agreement") is entered into as of July __, 2014, among SJC, INC., a Delaware corporation with a mailing address at 150 E. Olive Ave., Suite 211, Burbank, CA 91502 ("Borrower") and WESTERN GLOVE WORKS, a Manitoba company with a mailing address at 555 Logan Avenue, Winnipeg, Manitoba, Canada R3A 0S4 ("Lender").

## RECITALS

WHEREAS, the Borrower wishes to borrow from the Lender and the Lender is willing to make term loans to the Borrower in an aggregate amount of up to $200,000.00 on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

1.1.    **Term Loan Line of Credit Facility**.

(a)    Subject to the terms and conditions of this Agreement, the Lender agrees to make term loans (each a "Term Loan") to the Borrower from time to time during the commitment period set forth herein, in an aggregate principal amount not exceeding the amount of the Term Loan Commitment (as defined below).

(b)    Once repaid, Term Loans may not be reborrowed and each principal repayment of Term Loans shall reduce the total availability, such that the total amount borrowed in the aggregate shall not exceed Two-Hundred Thousand Dollars ($200,000.00) (the "Term Loan Commitment").

(c)    The availability of funds under this Agreement shall continue throughout the term of this Agreement up to the Term Loan Commitment, notwithstanding the repayment of all or any prior advances made, and the Borrower may borrow, in full or in part, and repay, in full or in part, in accordance with the terms of this Agreement.

(d)    Prior to any advances hereunder, the Borrower shall provide the Lender with all documents reasonably requested by the Lender.

1.2.    **Procedure for Term Loan Borrowing**.

(a)    The Borrower may borrow amounts under the Term Loan Commitment on any business day during the Commitment Period; ***provided, however,*** that the Borrower shall deliver to

1

the Lender an irrevocable borrowing notice (which borrowing notice must be received by the Lender no later than 10:00 a.m. (prevailing Eastern Time) five (5) business days prior to the requested borrowing date.

(b) The Borrower hereby unconditionally promises to pay to the Lender in full in cash, to the extent not previously paid, the then-unpaid principal amount of each Term Loan on the earlier of: (i) the maturity date of such Term Loan, or (ii) the Expiration Date (as defined below).

(c) The Lender shall maintain in accordance with its usual practice an account or accounts evidencing indebtedness of the Borrower to the Lender resulting from each Term Loan, including the amounts of principal and interest payable and paid to the Lender from time to time under this Agreement.

(d) All requests for advances hereunder shall be made by and through the Borrower, or its duly authorized designee.

(e) Lender's commitment to make advances under this Agreement shall expire on the first to occur of the following:

   i. The occurrence of an Event of Default (as defined below); or
   ii. The Expiration Date (as defined below).

1.3. **Interest Rate; Default Rate**.

(a) The rate of interest on each Term Loan advanced hereunder shall be a variable rate which shall at all times be equal to the *Wall Street Journal* Prime Rate, adjusted daily. The *Wall Street Journal* Prime Rate shall mean the base rate as quoted in the *Wall Street Journal* on corporate loans posted by at least 75% of the nation's 30 largest Lenders.

(b) All computations of interest shall be made on the basis of a year of 365 or 366 days, as the case may be, and the actual number of days elapsed. Interest shall accrue on each Term Loan for the day on which such Term Loan is made, and shall not accrue on a Term Loan, or any portion thereof, for the day on which such Term Loan or such portion is paid.

(c) The default interest rate shall be calculated as follows: (i) if all or any amount of principal of any Term Loan is not paid when due (without regard to any applicable grace periods), whether at stated maturity, by acceleration or otherwise, all outstanding Term Loans shall bear interest at a rate of interest per annum equal to the rate that would otherwise be applicable thereto pursuant to paragraph (a) above, plus 2% and shall be payable on demand; and (ii) if all or any portion of any interest on any Term Loan or other amount payable hereunder shall not be paid when due, whether at stated maturity, by acceleration or otherwise, such overdue amount shall bear interest at a rate of interest per annum equal to the rate that would otherwise be applicable thereto pursuant to paragraph (a) above, plus 4% and shall be payable on demand from the date of such non-payment until such amount is paid in full.

1.4. **Maturity**.

(a) Unless renewed or extended, this Agreement will expire on September 30, 2014 (the "Expiration Date"). No further advances shall be made hereunder by the Lender beyond the Maturity Date.

(b) All payments due hereunder shall be payable to the Lender at Western Glove Works, 555 Logan Avenue, Winnipeg, Manitoba, Canada R3A 0S4, or to such other parties or addresses as the Lender may from to time designate in writing.

1.5. **Prepayment**.

(a) The Borrower shall have the right at any time, and from time to time, to prepay the Loan, in whole or in part, without premium or penalty, but with accrued interest to the day of such prepayment on the amount prepaid.

## ARTICLE II

2.1. **Representations and Warranties**. To induce the Lender to enter into this Agreement and to make the Term Loans hereunder, the Borrower hereby represents and warrants to the Lender that:

(a) The Borrower (a) is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, (b) is duly qualified as a foreign corporation or other organization and in good standing under the laws of each jurisdiction where its ownership, lease or operation of property or the conduct of its business requires such qualification, and (c) is in compliance with all requirements of law.

(b) The Borrower has the power and authority, and the legal right, to own or lease and operate its property, and to carry on its business as now conducted and as proposed to be conducted, and to execute, deliver and perform the Loan Documents to which it is a party and, in the case of the Borrower, to obtain Loans hereunder. Each Loan Party has taken all necessary organizational action to authorize the execution, delivery and performance of this Agreement and any and all documents related to this Agreement (the "Loan Documents") to which it is a party and to authorize the borrowing of Term Loans on the terms and conditions contained herein. No consent or authorization of, filing with, notice to or other act by, or in respect of, any governmental authority or any other person is required in connection with the extensions of credit hereunder or with the execution, delivery, performance, validity or enforceability of this Agreement or any of the Loan Documents.

(c) This Agreement constitutes, and each other Loan Document when delivered hereunder will constitute, a legal, valid and binding obligation of each party thereto, enforceable against each such party in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

(d) The execution, delivery and performance of this Agreement and the other Loan

Documents, the borrowing of Term Loans hereunder and the use of the proceeds thereof will not violate any requirement of law or any contractual obligation of any party hereto and will not result in, or require, the creation or imposition of any lien on any of their respective properties or assets pursuant to any requirement of law or any such contractual obligation (other than the liens created by the Loan Documents).  No requirement of law or contractual obligation applicable to any party hereto could reasonably be expected to have a material adverse effect.

# **ARTICLE III**

3.1.    **Conditions Precedent**.  The obligation of the Lender to make the Term Loans requested to be made by it hereunder is subject to the satisfaction or the waiver by the Lender of the following conditions precedent:

(a)    Each of the representations and warranties made by the Borrower in or pursuant to the Loan Documents shall be true and correct on and as of such date as if made on and as of such date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties shall have been true and correct on such earlier date.

(b)    No Event of Default shall have occurred and be continuing on such date or after giving effect to the Term Loans requested to be made on such date.

(c)    The Borrower shall execute any and all Loan Documents necessary or appropriate to complete the advance of a Term Loan.

(d)    The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") shall have entered an interim order (to the extent necessary, with respect to the period prior to the entry of a final order) approving this Agreement and the Loan Documents (the "Interim Order") and a final order approving the same (the "Final Order").

(e)    Each of the Interim Order or the Final Order (from after the date the Final Order is entered) is in full force and effect and has not been vacated, reversed or rescinded or, without the prior written consent of the Lender, in its sole discretion, amended or modified and no appeal of such order has been timely filed or, if timely filed, no stay pending such appeal is currently effective.

(f)    This Agreement and the Loan Documents, taken together with the Interim Order and/or the Final Order and the Loan Documents, is effective to create in favor of the Lender, legal, valid, enforceable and continuing first priority liens on, and security interests in, the Collateral pledged hereunder or thereunder, in each case subject to no Liens.  Pursuant to the terms of the Interim Order and/or Final Order, no filing or other action will be necessary to perfect or protect such Liens and security interests.  Pursuant to and to the extent provided in the Interim Order and the Final Order, the obligations of the parties under this Agreement will constitute allowed super-priority administrative expense claims in the chapter 11 case of the Borrower under section 364(c) of title 11 of the United States Code (the "Bankruptcy Code"), having priority over all administrative expense claims and unsecured claims against such parties now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expense claims of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and all super-priority administrative expense claims granted to any other person (including avoidance actions and the proceeds thereof).

## ARTICLE IV

4.1. **Collateral**.

(a) The Collateral shall consist of that Collateral described in that certain Commercial Security Agreement between the Borrower and Lender, dated as of July 21, 2014.

## ARTICLE V

5.1. **Use of Proceeds**.

(a) Except as otherwise provided herein or approved by the Lender, the Borrower's use of any proceeds of any Term Loans shall be in a manner or for a purpose consistent with the budget attached hereto as **Schedule 1**, this Agreement, the Interim and Final Orders.

## ARTICLE VI

6.1. **Covenants**. The Borrower covenants and agrees that it will:

(a) Keep in full force and effect its legal existence, rights, licenses, permits and franchises and operate its business as conducted prior to the date hereof, maintain all property used in the conduct of its business and keep the same in good repair, working order and condition, and maintain adequate insurance on its properties against fire, theft, and extended coverage risks and against public liability and property damage and products liability and such other risks as may be required by law or as may be reasonably required by the Lender, in such form, for such periods, and written by such companies as may be satisfactory to the Lender. Borrower shall furnish the Lender, upon request, with certificates of compliance with the foregoing insurance provisions.

(b) Comply with all present and future applicable governmental laws and regulations, including without limitation, all environmental laws and regulations.

(c) Maintain and operate its business in a proper and efficient manner.

6.2. The Borrower shall immediately inform the Lender of any occurrence which would cause such immediate termination of the Lender's agreement to make advances hereunder or which would cause any prior information provided the Lender to become inaccurate or misleading. Delay or failure on the part of the Lender in exercising any rights hereunder shall not operate as a waiver of these or any other rights under this Agreement. After due date or acceleration of all amounts due hereunder, acceptance by the Lender of any payment representing less than the total balance of all such amounts shall not constitute a waiver or relinquishment of the Lender's right to full and immediate payment of all remaining amounts due hereunder. Until termination of the Lender's Agreement to make advances hereunder, and thereafter until all amounts due hereunder are paid in full, this Agreement and all Loan Documents securing, guaranteeing or otherwise relating to this Agreement shall continue in full force and effect, except for the Lender's agreement to make advances if that has been terminated, and shall continue even though from time to time the balance

of amounts due hereunder is reduced to zero. Upon termination of the Lender's agreement to make advances hereunder, the Lender shall no longer have any obligation to make further Term Loans pursuant to this Agreement. However, all other rights and duties of the parties hereto and under all Loan Documents securing, guaranteeing or otherwise relating to this Agreement shall continue in full force and effect until all amounts due the Lender hereunder are paid in full.

6.3. Upon the occurrence of any Event of Default under this Agreement, the Lender shall have all rights and remedies available under this Agreement, any of the documents constituting security herefore, or pursuant to applicable law. The Lender shall not be required to pursue or to exhaust its remedies against the Borrower, or its successors, or against any party liable for payment hereof, or against any property or assets mortgaged or pledged as security therefore, but upon nonpayment or nonperformance hereof may immediately demand and enforce payment and performance from the Borrower or may seek to realize upon the value of any collateral, in each case without any requirement of first seeking to collect the debt evidenced by this Agreement from any other source. The Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement may be brought in any state or federal court in the State of Maine, at the election of the Lender. By the execution and delivery hereof, the Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any such court in any such action or proceeding. The Borrower shall be liable for, and hereby agrees to pay, upon demand, any and all costs or expenses of any nature whatsoever incurred by the Lender in endeavoring to collect or enforce this Agreement or any Term Loan against the Borrower, including without limiting the generality of the foregoing, reasonable attorneys' fees and expenses. The Lender shall not be deemed to have waived any of its rights or remedies under this Agreement or any Term Loan or under any of the Loan Documents by any act, delay, omission, or failure or refusal to exercise any of such rights or remedies. No waiver by the Lender, of any kind, shall be valid unless it is writing and signed by an officer by the Lender, and then only to the extent specifically stated. All of the rights and remedies of the Lender shall be cumulative and not exclusive, and may not be exercised on any one or more occasions either singularly or concurrently.

6.4. The Borrower agrees to take all necessary steps to administer, supervise, preserve, insure and protect any collateral security. The Borrower also agrees to pay all reasonable expenses of any nature, whether incurred in or out of court, and whether incurred before or after this Agreement is terminated or demanded, including but not limited to reasonable attorney's fees and costs, which the Lender may deem necessary or proper in connection with the satisfaction of the indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance) or the realization upon any collateral security. The Lender is authorized to pay at any time and from time to time any or all of such expenses, add the amount of such payment to the amount of the indebtedness and charge interest thereon at the rate specified herein.

6.5. The Borrower hereby jointly and severally waives demand, protest, suretyship and guarantorship defenses generally, including, but not limited to: extensions of time; delays; releases of or failure to protect, to realize upon or to take any action with respect to any collateral security; modifications or amendments of the terms of this Agreement or of any of the collateral security documents securing, guaranteeing or otherwise relating to it; omission to act by or on behalf of the Lender; failure to record, perfect or to take possession of any collateral security documents, or security interests; releases of rights; failure to proceed against any of the parties liable hereon; and

any other indulgences including releases of any of the parties liable hereon, which may be granted from time to time by the Lender to any of the parties liable hereon, all of which actions the Lender may take at its sole discretion without notice to or further assent from, and without affecting the liability of, any of the parties liable hereon.

## ARTICLE VII

7.1. **Events of Default**.

(a) The happening of any of the following events or conditions with respect to the Borrower under this Agreement shall constitute an "Event of Default":

   i. The dissolution or termination of existence of the Borrower;

   ii. The entry of a decree or order for relief with respect to the Borrower in an involuntary case under the federal Bankruptcy laws, as now or hereafter constituted, or appointing a receiver, liquidator, trustee, custodian (or similar official) of the Borrower, or ordering the winding up or liquidation of its affairs which is not promptly contested and released or discharged within sixty (60) days;

   iii. Default in the payment or performance of this Agreement or any Term Loan not cured within any applicable grace period, or of any covenant or liability contained or referred to herein or in any instrument, document, or agreement evidencing or securing any of the obligations of the Borrower to the Lender or default under any other obligations of the undersigned to the Lender, whether now existing or hereafter arising, including, but not limited to, default under this Agreement or any other Loan Document (all of the Borrower's obligations to the Lender being hereinafter collectively referred to as the "Obligations");

   iv. Default in any covenant or liability contained or referred to in any document or agreement evidencing or securing the Obligations, as the same may be modified, amended, extended, or replaced from time to time not cured within any applicable grace period;

   v. Uninsured loss, substantial damage, destruction, or sale or encumbrance, whether junior or senior (unless otherwise approved by the Lender), to the Lender's lien or security interest, to or of any material property constituting collateral hereof or the making of any levy, seizure or attachment thereof or thereon or the failure to pay when due any tax thereon, or with respect to any insurance policy, or any premium therefore unless such loss, substantial damage or destruction is covered by insurance and repaired with reasonable promptness, and unless any such levy, seizure or attachment, failure to pay tax or insurance premium is removed within thirty (30) days of the date when due, or if any final judgment and execution issued against the undersigned remains unsatisfied for a period of thirty (30) days after final judgment;

   vi. Any material warranty, representation or statement made or furnished to the Lender by or on behalf of the Borrower proving to have been false or erroneous when made

7

or furnished;

vii. Failure of the Borrower to provide to the Lender the financial information required to be provided by Borrower to Lender hereunder; or

viii. Failure of the Borrower to maintain the Debt Service Coverage Ratio, Tangible Liabilities to Tangible Net Worth Ratio, and Tangible Net Worth covenant provided herein.

## ARTICLE VIII

8.1. **Miscellaneous**.

(a) **Waiver of Event of Default**. No delay in accelerating the maturity of any obligation shall affect the rights of the Lender later to take such action with respect thereto, and no waiver as to one Event of Default shall affect rights as to any other default.

(b) **Notices**. Except as otherwise specifically provided for herein, all notices, demands, and requests provided for or permitted to be given pursuant to this Agreement must be in writing and shall be given by personal delivery or by depositing the same in the United States mail, postage paid, and certified, return receipt requested, or via overnight mail, at the address set forth below, as such address may be changed by notice given to the other party.

Lender's Address:

Western Glove Works
555 Logan Avenue
Winnipeg, Manitoba, Canada R3A 0S4

Borrower's Address:

SJC, Inc.
150 E. Olive Ave.
Suite 211
Burbank, CA 91502

(c) **Survival**. This Agreement and all covenants, agreements, representations and warranties made herein and in any Loan Documents related hereto shall survive any making by the Lender of a Term Loan and the execution and delivery of any Loan Documents and shall continue in full force and effect until this Agreement is terminated and all the obligations evidenced hereby or by the Loan Documents are paid in full.

(d) **Legal Fees and Expenses; Additional Fees and Charges**. Borrower shall pay on demand all expenses of Lender in connection with the preparation, administration, default, collection, waiver or amendment of Loan terms, or in connection with Lender's exercise, preservation or enforcement of any of its rights, remedies or options hereunder, including, without

limitation, fees of outside legal counsel, accounting, consulting, brokerage or other similar professional fees or expenses, and any fees or expenses associated with travel or other costs relating to any appraisals or examinations required to be conducted in connection with any Term Loan or any collateral therefor.

(e) **Choice of Law**.  This Agreement, all the other Loan Documents and the rights and obligations of the parties hereunder, shall be construed and interpreted in accordance with laws of the State of Delaware (excluding the laws applicable to conflicts or choice of law).

(f) **Written Modification and Waiver**.  No modification or waiver of any provision of this Agreement or of any of the other Loan Documents nor consent to any departure by the Borrower therefrom shall in any event be effective unless the same shall be in writing, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in the same, similar or other circumstances, except as otherwise provided.

(g) **Documentation**.  All documents required hereunder shall be in form and substance satisfactory to the Lender.

(h) **Unenforceability**.  In the event any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall be valid and enforceable to the fullest extent permitted by law.

(i) **Cumulative Remedies; Setoff**.  The rights and remedies provided the Lender in this Agreement and in the other Loan Documents shall be cumulative and shall be in addition to and not in derogation of any rights or remedies provided the Lender in any other document, instrument or agreement or under applicable law or otherwise, and may be exercised concurrently or successively. Borrower hereby grants to Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Lender hereunder and under the Loan Documents, whether now existing or hereafter arising, upon and against all deposits (excluding payroll deposits), credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Lender (regardless of the branch at issue) and its successors and assigns or in transit to any of them.  At any time, without demand or notice (any such notice being expressly waived by Borrower) and upon the occurrence of an Event of Default not cured within any applicable grace period, Lender may setoff the same or any part thereof and apply the same to any liability or obligation of Borrower even though unmatured and regardless of the adequacy of any other collateral securing the Loan.  ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LINE OF CREDIT HEREUNDER, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS, OR OTHER PROPERTY OF BORROWER, IS HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

(j) **Jurisdiction and Venue**.  The Borrower irrevocably consents that any legal action or proceeding against it or any of its property with respect to any matter arising under or relating to this

Agreement and the other Loan Documents may be brought in any court of the State of Delaware, or any Federal Court of the United States of America located in the State of Delaware, as the Lender may elect, and by execution and delivery of this Agreement the Borrower hereby submits to and accepts with regard to any such action or proceeding, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. The foregoing, however, shall not limit the Lender's rights to serve process in any manner permitted by law or to bring any legal action or proceeding or to obtain execution of judgment in any other jurisdiction. The Borrower irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding in the State of Maine arising out of or relating to this Agreement, the Term Loans, and the other Loan Documents, and further irrevocably waives any claim that the State of Maine is not a convenient forum for any such suit, action or proceeding.

(k)     **Presentment; etc**. The Borrower waives presentment, notice of dishonor, protest, notice of nonpayment, demand and other notice of any kind. This Agreement and the rights and duties arising hereunder are not assignable, delegable, or otherwise transferrable by the undersigned without the Lender's prior written consent. This Agreement shall be binding upon the successors and assigns of the undersigned and the Lender. The Lender's rights and duties arising hereunder may be assigned, delegated, or otherwise transferred by the Lender without the written consent of, or notice to, the undersigned. If, for any reason, any payment to Lender applied to amounts outstanding hereunder is required to be refunded by the Lender to the Borrower or turned over by the Lender to any other person or entity, the Borrower agrees to pay to the Lender on demand an amount equal to the payment so refunded or turned over by the Lender and the liability of the Borrower shall not be treated as having been discharged by the original payment to the Lender giving rise to such refunded or turned over payment.

(l)     **Integration**. This Agreement is intended by the parties as the final, complete and exclusive statement of the transactions evidenced by this Agreement. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superseded by this Agreement and no party is relying on any promise, agreement or understanding not set forth in this Agreement. This Agreement may not be amended or modified except by a written instrument describing such amendment or modification executed by Borrower and Lender.

(m)     **Lender's Decisional Standards**. To the extent that applicable laws require the Lender's actions or decisions under the Loan Documents to be conducted in good faith, the term "good faith" shall be defined (using a subjective standard) as honesty in fact with regard to the conduct or transaction concerned based upon the facts and circumstances actually known to the individual(s) acting for the Lender, and such requirement may be satisfied by reliance upon the advice of attorneys, accountants, appraisers, architects, engineers, or other qualified professionals.

(n)     **Descriptive Headings; Context**. The captions in this Agreement are for convenience of reference only and shall not define or limit any provision. Whenever the context requires, reference in this Agreement to the neuter gender shall include the masculine and/or feminine gender, and the singular number shall include the plural, and, in each case, vice versa.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK.]

**IN WITNESS WHEREOF**, the Borrower and the Lender, by persons duly authorized, have executed this Agreement as of this 21 day of July, 2014.

| **WITNESS:** | **BORROWER:** |
|---|---|
| | SJC, INC. |
| _____ | By: _____ |
| Name: | Name: |
| | Its: |
| | **LENDER:** |
| | WESTERN GLOVE WORKS |
| _____ | By: _____ |
| Name: | Name: |
| | Its: |

**<u>Schedule 1</u>**

**Approved Budget**